Santillo *v.* Pittsburgh Railways Company,
Appellant.

Argued April 10, 1956. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and CARR, JJ.

*Margaret M. Morrison,* for appellant.

*Frank R. Bolte,* for appellee.

OPINION BY CARR, J., July 17, 1956:

This is a workmen's compensation case in which the employer, Pittsburgh Railways Company, appeals from an Order of the County Court of Allegheny County affirming the findings of fact, conclusions of law and order of award of the compensation authorities in favor of the claimant.

On October 13, 1953 at about two o'clock in the afternoon George Santillo and a helper were on the elevated platform of a tower truck repairing overhead trolley lines on Forbes Street in the City of Pittsburgh when the truck was struck by a streetcar. A third em-

ployee was in the cab of the truck. Both men on the tower were knocked over and thrown against a rack or railing around the platform. Within a few minutes their supervisor arrived at the scene of the accident and the claimant told him he did not think he was injured but that he was "not feeling so good—rattled—would like to go home and rest up." The other two employees were taken to the company medical director for treatment of minor injuries and Santillo was taken home by a route foreman. The following day he reported for work and continued to work until February 11, 1954 when he was admitted to Doctors Hospital for observation and for x-rays of his back.

Appellant raises the same three questions on this appeal which were unsuccessfully advanced before the board and the County Court of Allegheny County. It contends that there was insufficient competent evidence to support the Fourth, Sixth and Tenth findings of the referee which were affirmed by the board and the court below. These findings are:

"Fourth: On October 13, 1953, while in the course of his employment with the Defendant, the Claimant was injured by accident when the tower truck on which he was working was struck by a street car, the Claimant sustaining a sprain of the back.

Sixth: On February 11, 1954, the Claimant became totally disabled as a result of the accidental injuries of October 13, 1953, which total disability continued to June 21, 1954.

Tenth: The Defendant received proper notice."

The compensation authorities having found in favor of the claimant, we are required in our consideration of the case to view the evidence in the light most favorable to the claimant and he is entitled to the benefit of every reasonable inference deducible therefrom. *Yak-*

*lich vs. Union Collieries Company,* 158 Pa. Superior Ct. 55, 43 A. 2d 591; *Hadfield vs. American Society of Composers, Authors and Publishers,* 174 Pa. Superior Ct. 394.

The finding that he was injured in the accident on October 13, 1953 is supported by the testimony of the claimant, his wife Clara, Dr. Gallagher, and his helper. Viewed in the light most favorable to the claimant, the evidence may be summarized as follows: Prior to the accident he enjoyed good health but immediately afterwards he did not feel well, was nervous and shaken up. As soon as he returned home that day he went to bed without eating his supper and the next morning he found it difficult to turn over in bed, to tie his shoes or to bend over. Although he continued working, his condition became progressively worse until, on February 11, 1954, it was necessary for him to enter Doctors Hospital. Dr. Gallagher, his family physician, who saw the claimant on October 20, 1953, found that he had a "marked muscle spasm of the lower spine, difficulty in walking, especially in getting up from a chair" and made a diagnosis of traumatic injury to the lumbosacral spine which in his professional opinion was due to the accident of October 13. Harry Heinecke, his helper on the tower, testified that at the time of the impact Santillo "was moving up against the rack because when we stopped I was up against George."

The causal connection between the injury and the disability is also established by the testimony of these same witnesses. The claimant's health was good prior to the accident but thereafter he frequently complained of stiffness and pain until he became totally disabled on February 11, 1954. Both Dr. Gallagher, his family physician, and Dr. Fiske, an orthopedic specialist and senior orthopedic surgeon at St. Margaret's Hospital,

gave it as their professional opinion that the accident was the cause of the plaintiff's disability. Although there is some medical testimony of a contrary nature, particularly that of Dr. Heberling, an orthopedic surgeon on the staff of Allegheny General Hospital who did not examine the claimant until April of 1954, the credibility of the witnesses was a matter for the fact finding body. *Malik vs. Uniontown*, 172 Pa. Superior Ct. 562, 94 A. 2d 151; *Wilkinson vs. United Parcel Service of Pennsylvania*, 158 Pa. Superior Ct. 22, 43 A. 2d 408. It is apparent therefore that it cannot be said as a matter of law that there was not sufficient credible testimony to support the findings that the claimant was injured in the accident and that this injury was the cause of his disability.

As to the finding that the defendant received proper notice, the defendant contends that there is no evidence from which said finding could be made. Sec. 311 of The Workmen's Compensation Act of 1915 provides: "Unless the employe or someone in his behalf, or some of the dependents or someone in their behalf, shall give notice thereof to the employer within fourteen days after the accident, no compensation shall be due until such notice be given, and, unless such notice be given within ninety days after the occurrence of the injury, no compensation shall be allowed." Act of June 21, 1939, P. L. 520, 77 PS §631. This section is to be liberally construed. *Lambing vs. Consolidation Coal Company*, 161 Pa. Superior Ct. 346; *Uditsky vs. Krakovitz*, 133 Pa. Superior Ct. 186; *Matelivicz vs. Susquehanna Collieries Co.*, 147 Pa. Superior Ct. 479. Its purpose is to protect the employer from stale claims for accidental injuries made after the opportunity has passed for a full and complete examination. *Wilkinson vs. United Parcel Service of Pennsylvania*, 158 Pa. Superior Ct. 22.

The undisputed evidence is that at the scene of the accident the claimant told his supervisor that he was nervous, shaken up and wanted to go home. When he reported for work the following day he again told his supervisor that he "didn't feel right up to par" and subsequent to October 14 he had numerous conversations with his superior repeating that he did not feel well. During the Fall of that year as his condition continued to become worse he consulted Dr. Gallagher who repeatedly called Dr. Rectenwald, medical director for Pittsburgh Railways Company informing him that he was treating Mr. Santillo and inquiring whether he was to be paid for further treatment. This testimony if believed by the referee was sufficient to give the company notice of the injury.

In our opinion there was sufficient credible testimony to support all the findings of fact.

Judgment affirmed.